UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAVID HELMS,<br><br>        Petitioner,<br><br>        v.<br><br>KEN CLARK, Warden,<br><br>        Respondent. | No. CV 07-5263-GHK (PLA)<br><br>**ORDER ADOPTING FINDINGS,<br>CONCLUSIONS AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE** |

## INTRODUCTION

On January 14, 2010, the United States Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that petitioner's Petition for Writ of Habeas Corpus be denied and the action dismissed with prejudice. Thereafter, on February 17, 2010, petitioner filed "Objections to Magistrate's Report and Recommendations" ("Objs.").

## DISCUSSION

In his Objections, petitioner contends that: (1) the Magistrate Judge erred in finding that he is not entitled to "gap tolling" between his state court habeas petitions; (2) he should be entitled to equitable tolling because of difficulties he experienced in preparing his state court habeas petitions; (3) the Magistrate Judge failed to take into consideration all of his "new evidence" in

rejecting petitioner's claim of actual innocence; (4) the Magistrate Judge "erred in refusing to grant petitioner requested discovery to assist him in proving his actual innocence claim"; and (5) the Magistrate Judge erred in rejecting his Brady claim.

First, petitioner is incorrect in his assertion that Evans v. Chavis, 546 U.S. 189, 126 S. Ct. 846, 849, 163 L. Ed. 2d 684 (2006), does not apply to his case. Petitioner argues that because the California Court of Appeal, in its rejection of his first state court habeas petition on January 3, 2002, denied the petition without prejudice to petitioner filing a new petition in the California Superior Court, that court's rejection was not "a conclusion" and petitioner had no specific time frame in which to file a subsequent petition. (See Objs. at 3). As the Magistrate Judge discussed in the R&R, however, Chavis holds that a petitioner's unexplained delay of six months between two state court petitions is presumptively unreasonable. (See R&R at 18-20). As noted in footnote 3 of the R&R, the fact that petitioner's subsequent petition was filed in a lower court is not material in his case because he was directed by the Court of Appeal to pursue his claim in the Superior Court. Petitioner, however, still has failed to offer any explanation for his eleven-month delay in filing a subsequent habeas petition in the Los Angeles County Superior Court on December 12, 2002.

Second, petitioner contends that he is entitled to equitable tolling because some unspecified legal materials had to be ordered from an outside law library (which caused a delay of four to six weeks at some unspecified time), because he was prevented from filing his own petition once the state court had appointed counsel with respect to his Brady claim, and because his appointed counsel refused to assist petitioner with his claims of ineffective assistance of counsel. (See Objs. at 4-8). A mere delay in receiving some legal materials from a prison library, however, is not the type of "extraordinary circumstances" that might potentially give rise to equitable tolling, nor has petitioner made any showing that any wait for legal materials was the proximate cause of his delay in filing a habeas petition. See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009) (holding that a petitioner was not entitled to equitable tolling based on allegations of "[o]rdinary prison limitations on [his] access to the law library" that were "neither 'extraordinary' nor

1  made it 'impossible' for him to file his petition in a timely manner"); Lott v. Mueller, 304 F.3d 918,
2  924 (9th Cir. 2002) (allegations that petitioner was denied complete access to his legal files for 82
3  days during two temporary transfers may be sufficient to constitute "extraordinary circumstances"
4  justifying equitable tolling).  Further, as stated in the R&R, the record belies petitioner's assertion
5  that he was prevented from raising his claims of ineffective assistance of counsel in the state court
6  because his appointed attorney was appointed solely for the purpose of his Brady claim.  Rather,
7  the California Court of Appeal only ordered that petitioner's references to his Brady issue be
8  stricken in the habeas petition filed by petitioner during the time in which he was represented by
9  appointed counsel.  The Court of Appeal then denied the remaining claims that petitioner
10 presented in that habeas petition.  (See R&R at 21).  Finally, the fact that petitioner's appointed
11 counsel for one claim refused to assist him in raising other claims in a state court habeas petition
12 is irrelevant to petitioner's claim of equitable tolling because petitioner has no constitutional right
13 to counsel beyond his first direct appeal, and the negligent actions of a state-appointed attorney
14 do not entitle petitioner to equitable tolling.  See Lawrence v. Florida, 549 U.S. 327, 336-37, 127
15 S. Ct. 1079, 166 L. Ed. 2d 924 (2007) ("a State's effort to assist prisoners in postconviction
16 proceedings does not make the State accountable for a prisoner's delay"); Wright v. West, 505
17 U.S. 277, 293, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (the Constitution guarantees the right
18 of counsel on a first direct appeal, but not on habeas); Miranda v. Castro, 292 F.3d 1063, 1067-68
19 (9th Cir.) (denying equitable tolling for attorney negligence because there is no right to effective
20 assistance of counsel for post-conviction relief), cert. denied, 537 U.S. 1003 (2002).

21         Third, petitioner's "new evidence," even when considering all of his purported "alibi
22 evidence" in addition to the evidence pertaining to the purported "credibility problems" of Dr. Ribe,
23 does not begin to approach the type of evidence that would be necessary to bring him "within the
24 narrow class of cases … implicating a fundamental miscarriage of justice." Schlup v. Delo, 513
25 U.S. 298, 315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) (omission in original, internal quotation
26 marks omitted).  In the few cases in which a federal habeas petitioner has been found to satisfy
27 the Schlup standard, the new reliable evidence consisted of credible evidence that the petitioner
28 had a solid alibi for the time of the crime, numerous exonerating eyewitness accounts of the crime,

DNA evidence excluding the petitioner and identifying another potential perpetrator, a credible confession by a likely suspect explaining that he had framed the petitioner, evidence that called into question the reliability of all of the evidence on which petitioner's conviction rested, and/or evidence contradicting the very premise of the prosecutor's case against the petitioner. See, e.g., House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006); Souter v. Jones, 395 F.3d 577 (6th Cir. 2005); Carriger v. Stewart, 132 F.3d 463, 485-86 (9th Cir. 1997) (en banc); Lisker v. Knowles, 463 F. Supp. 2d 1008, 1040 (C.D. Cal. 2006); Garcia v. Portuondo, 334 F. Supp. 2d 446 (S.D.N.Y. 2004); Schlup v. Delo, 912 F. Supp. 448 (E.D. Mo. 1995).

Here, despite petitioner's allegation that his "new evidence" goes "directly to petitioner's innocence" and that "alibi evidence" was not presented to the jury, apart from petitioner's contention that he could not have had a conversation with one of the witnesses the evening after the murder because he was still at the hospital at the time, none of the purportedly "new evidence" relates directly to the time or circumstances of the murder and could not constitute an alibi for the charged crime. (See Objs. at 10; Pet. at 22, 32-34). Rather, petitioner alleges that the credibility of "key witnesses" for the prosecution was questionable, specifically that witnesses who testified about earlier incidents during which petitioner had allegedly physically abused his son or sons could not have witnessed such incidents or were not credible for other reasons; petitioner's belief that one witness who testified that he had seen petitioner knock his son out of a stroller at a time during which petitioner would not have been at home and that he had heard petitioner threaten petitioner's girlfriend about taking blame for the incident had entered into a plea agreement pertaining to a child molestation charge in exchange for his testimony against petitioner; and that a witness who testified that she heard petitioner at his apartment the night his son was killed having a party and laughing must have heard petitioner when he was accompanied by police while they collected evidence. Petitioner also alleges that his girlfriend, who originally entered a plea of no contest to manslaughter for the death of petitioner's son, presented inconsistent testimony, had a motive to commit the murder, and was not adequately impeached because of the ineffective assistance of petitioner's counsel. (See Pet. at 21-65; Objs. at 10-13). However, petitioner's girlfriend testified and was subjected to cross-examination by petitioner's counsel, and the jury was

1 fully apprised of the fact that she lied to the police, as well as the fact that charges were originally
2 brought against her. Accordingly, petitioner has failed to persuade the Court that, in light of all the
3 evidence, including petitioner's purported "new evidence," it is more likely than not that no
4 reasonable juror would have found him guilty of the charged crimes. As Justice O'Connor
5 emphasized in Schlup, the Supreme Court strove to "ensure that the actual innocence exception
6 remains only a safety valve for the extraordinary case." Schlup, 513 U.S. at 333 (O'Connor, J.,
7 concurring) (internal quotation marks omitted). Petitioner's is not such a case.

8 Additionally, petitioner's reliance on Sistrunk v. Armenakis, 292 F.3d 669 (9th Cir. 2002),
9 cert. denied, 537 U.S. 1115 (2003), to argue that he need only show "evidence undercutting the
10 reliability of the verdict," is misplaced. (See Objs. at 10-11). As the Ninth Circuit recently
11 explained, "[I]n light of Supreme Court precedent, as well as our own, we conclude that the
12 miscarriage of justice exception is limited to those extraordinary cases where the petitioner asserts
13 his innocence and establishes that the court cannot have confidence in the contrary finding of
14 guilt." Johnson v. Knowles, 541 F.3d 933, 937 (9th Cir. 2008), cert. denied, 129 S. Ct. 2060, 173
15 L. Ed. 2d 1140 (2009); see also House, 547 U.S. at 537 (reiterating that the Schlup standard is
16 designed to "ensure[] that petitioner's case is truly 'extraordinary', while still providing petitioner
17 a meaningful avenue by which to avoid manifest injustice"). Petitioner has altogether failed to
18 show that, were he able to establish the truth of his purported "new evidence," such evidence
19 would cause the Court to lose confidence in the jury's verdict against him.

20 Fourth, petitioner contends that the Magistrate Judge "erred in refusing to grant petitioner
21 requested discovery to assist him in proving his actual innocence claim." Petitioner further
22 contends that the Magistrate Judge ignored his motion seeking discover of "exculpatory evidence;"
23 however, that motion was denied in a Minute Order of September 5, 2007, on the grounds that
24 petitioner had failed to show good cause for the requested discovery. (See Objs. at 13-14, Ex.
25 K). Petitioner argues that he is entitled to discovery here because he has raised "enough of a
26 claim" of actual innocence for the Court to further develop the factual record. (See Objs. at 14-15).
27 To the contrary, petitioner has failed to allege any facts that, if proven to be true, would establish
28 his claim of actual innocence. See, e.g., Earp v. Ornoski, 431 F.3d 1158, 1173 (9th Cir. 2005),

cert. denied, 126 S. Ct. 2295, 164 L. Ed. 2d 834 (2006) (petitioner is entitled to an evidentiary hearing if he "has alleged facts that, if proven true, may entitle him to relief").

Fifth, petitioner contends that the Magistrate Judge erred in rejecting his Brady claim. Petitioner also contends that the Magistrate Judge was incorrect in finding that "petitioner had failed to present any evidence challenging the prosecution's submitted medical testimony on the time of death" because he did present expert testimony that the child did not die as rapidly as the prosecution argued, and in fact, the child lived from one to three hours after the injuries, "which would exclude petitioner as being the assailant." (See Objs. at 16-21). But in its rejection of petitioner's Brady claim, the Magistrate Judge found that petitioner's counsel thoroughly explored Dr. Ribe's altered opinion, that the two medical experts who testified on behalf of petitioner both supported Dr. Ribe's original opinion, that the jury was fully advised that Dr. Ribe had changed his opinion and that medical evidence existed to support Dr. Ribe's original estimate of the length of time it took the child to die, and that petitioner has failed to show that, had the jury been provided with additional information that Dr. Ribe had on other occasions changed his medical opinion, the jury would have decided to believe the testimony of petitioner's two medical experts rather than the revised testimony of Dr. Ribe, whose revised opinion at petitioner's trial was supported by the testimony of three other medical experts. (See R&R at 14-16). Moreover, the Magistrate Judge also found that petitioner failed to show that the prosecutor withheld any additional impeachment evidence pertaining to Dr. Ribe. (See R&R at 14-15).

Accordingly, after full consideration of the arguments and allegations in petitioner's Objections, the Court concludes as follows:

/
/
/
/
/
/

## **CONCLUSION**

Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the Magistrate Judge's Report and Recommendation, and petitioner's Objections thereto. The Court agrees with the recommendations of the Magistrate Judge.

ACCORDINGLY, IT IS ORDERED:

1. The Report and Recommendation is adopted.

2. Judgment shall be entered consistent with this order.

3. The clerk shall serve this order and the judgment on all counsel or parties of record.

DATED: March 11, 2010

HONORABLE GEORGE H. KING
UNITED STATES DISTRICT JUDGE